**UNITED STATES of America, Plaintiff,**

v.

**Clarence BRISCO, Defendant.**

**Crim. A. No. 78–62.**

United States District Court,
D. Delaware.

July 16, 1979.

John H. McDonald, Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

L. Vincent Ramunno, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Clarence Brisco, the defendant in this criminal action, was charged in a six count indictment with possession (or attempted possession) of heroin with intent to distribute it, distribution of heroin, and conspiracy to distribute heroin, all in violation of 21 U.S.C. §§ 841(a)(1) and 846. Severance was granted prior to trial as to three counts of the indictment, which charged the defendant with possession and distribution of heroin on September 16, 1978, and with possession of heroin with intent to distribute it on September 20, 1978. The jury to which these three counts were tried was also instructed as to the lesser included offense of simple possession of heroin and asked to consider whether the defendant was guilty of that offense on either occasion, should it find him not guilty of the greater offenses charged in the indictment. After a three-day trial ending March 7, 1979, Mr. Brisco was convicted of possession and distribution of heroin on September 16, 1978 and of simple possession of heroin on September 20, 1978. Presently before the Court is defendant's motion for a new trial based on the charge that errors of constitutional dimension were made by the prosecuting attorney during his summation to the jury.

The decision of the United States Supreme Court in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), provides the analytical framework within which this Court must evaluate defendant's claims of prosecutorial misconduct. There the Court described the limits of a prosecutor's proper argument as follows:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. at 88, 55 S.Ct. at 633.

Mr. Brisco contends that a variety of statements made by the prosecutor in his rebuttal to the defendant's closing statement constituted "foul blows." The troublesome comments will be considered presently, but at the outset it is necessary to address the government's contention that the Court need not even consider their propriety because the defendant failed to make a timely objection to the allegedly prejudicial remarks. The government argues that because the prosecutor was allowed to complete his entire rebuttal argument before objection (in the form of a motion for mistrial) was raised, it was afforded no opportunity to make "on the spot corrections" of any remarks found to be improper. To support this contention, the government relies principally on a footnote to the Third Circuit's opinion in *United States v. Somers*, 496 F.2d 723 (3d Cir. 1974), which states as follows:

The defendants did not object until after the prosecutor had completed his entire opening statement. The District Court found, and the appellee contends, that the defendants waived their objections by failing to object until after the Government had completed its statement. We agree with the District Court that requiring immediate objections to improprieties in openings serves the dual purpose of forestalling further improprieties and "curing" improper remarks while the

remarks are still fresh in the minds of the jurors. In the absence of countervailing factors, it is proper for District Courts to require that objections to openings be made immediately. We do not, however, rest our decision on this ground. As the analysis above indicates, had the objection been properly raised, reversible error still would not have been present.

496 F.2d at 738 n.28.

As is readily apparent from the quoted passage, the rule upon which the government relies was advanced by the Third Circuit in dicta and in the context of an opening, rather than a closing, statement. Assuming, however, that an immediate objection rule can be applied in closing statements to preclude inquiry into the propriety of comments made therein, there are "countervailing factors" that make such a requirement improper in this case. The remarks challenged by the defendant encompass some fifteen of sixteen separate statements in the course of a relatively brief rebuttal. To have required the defendant's counsel to object individually—even if such objections could have been argued at sidebar—would have forced him to risk giving the jury the impression that he was argumentative and contentious at a time when he would have no further opportunity to dispell that impression in another address to the jury. Furthermore, several of the comments at issue here are challenged on the grounds that they constitute argument based on facts not in evidence. Raising such objection in the presence of the jury might have had the effect of emphasizing damaging evidence, were an objection to the propriety of the argument to be overruled. Finally, the defendant's objection to some of the prosecutor's comments was made on the grounds that they were inflammatory and appealed to the prejudices of the jurors. These qualities are ones that can best be evaluated in light of the entire rebuttal argument, and therefore an objection raised at the close of the summation permitted the Court to base its ruling upon a review of the complete context in which the challenged comments were made.

Immediately following the government's rebuttal summation and outside the presence of the jury, Mr. Brisco's attorney made a motion for mistrial that raised with considerable specificity the claims now before the Court. A cautionary instruction was given to the jury prior to charging them on the law,[1] and a further warning was later presented in response to a question concerning the evidence posed by the jury.[2] This method of making "on-the-spot corrections" of errors made in the prosecutor's rebuttal was an appropriate way of balancing the interests of the government and the defendant. Under such circumstances, and particularly where defense counsel would have no opportunity to rehabilitate his image before the jury, failure to make an immediate objection to improper remarks of the prosecutor should not result in a *per se* waiver of that objection. Consideration will now be given to the merits of defendant's claims of prosecutorial misconduct.

One category of comments that the defendant contends constitutes improper prosecutorial argument consists of several remarks calculated to portray the defendant as a part of a large and extended drug traffic network, and to suggest that he operated on the wholesale level. More particularly, the prosecutor suggested that Special Agent Dorsey, the undercover agent who participated in Mr. Brisco's arrest, posed as a drug dealer from New Jersey and sought to buy heroin from Mr. Brisco for resale purposes. Examples from this line of argument are as follows:

> . . . So when they go after and they apprehend an offender, a trafficker, a dealer like Clarence Brisco, that is as important to stopping heroin trafficking here in Wilmington at least as anything they can do.[3]

. . . . .

---

1. Trial Transcript, Vol. C, p. 65 (C-65).

2. C-99.

3. C-52-53.

. . . . Did Dorsey testify that he was a junkie? No. He said that he was a dealer from New Jersey and he wanted to buy from Mr. Brisco for further distribution. So where does that put Mr. Brisco on the scale. It puts him up somewhere around perhaps the wholesaler level rather than the street dealer. . . .[4]

\* \* \* \* \* \*

. . . and that is what he delivered, because that is an awful lot of heroin here. These are wholesale quantities. That is what Special Agent Dorsey was posing as, a buyer buying from a wholesaler for resale.[5]

\* \* \* \* \* \*

The quantity here has to be sufficient for presumably June, or Dorsey, to make a profit in his business because he is not in it for the just the heck of it. So then this has to be cut again, because every time it moves down the chain it is cut again. . . .[6]

There was absolutely no evidence in the record to support these assertions: specifically, there was no testimony that Special Agent Dorsey had presented himself as a dealer, or that the transaction involved packages of drugs of a size ordinarily found in the wholesale trade.

█ It is well settled that prosecutorial comments based on facts outside the record are improper. *United States v. Somers, supra; United States v. Benson,* 487 F.2d 978 (3d Cir. 1973); *United States v. Le-Fevre,* 483 F.2d 477 (3d Cir. 1973). In *Le-Fevre,* the Third Circuit expressly approved Standard 5.9 of the *American Bar Association Standards Relating to the Prosecution Function,* which states:

4. C–53.

5. C–54.

6. *Id.*

7. See *ABA Standards Relating to the Prosecution Function,* Standard 5.8(c), which provides: The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

8. In *Berger,* the Court wrote:

It is unprofessional conduct for the prosecutor intentionally to refer to or argue on the basis of facts outside the record whether at trial or on appeal, unless such facts are matters of common knowledge based on ordinary human experience or matters of which the court may take judicial notice.

The repetitive nature of the prosecutor's comments indicates that he clearly intended to characterize the defendant as a wholesaler selling to a dealer, and this intentional misstatement is rendered even more egregious because it raised the unwarranted specter of large scale drug trafficking.[7] The prosecutor's conduct is made no less reprehensible by the fact that defense counsel's summation sought to characterize Mr. Brisco as simply a junkie in need of help and understanding, and to engage the jury in speculation about several possible exculpatory explanations for the defendant's conduct. Both the prosecutor and defense counsel are entitled to argue inferences reasonably permissible from the evidence, and such argument is a particularly useful defense tool for interjecting doubt into the minds of jurors. Yet even if parts of defense counsel's summation exceeded the bounds of proper advocacy, the doctrine allowing a prosecutor to respond to and rebut an improper defense argument is not here applicable. The prosecutor, as the Supreme Court noted in *Berger, supra,*[8] is clothed with an aura of public trust and credibility, and therefore bears a special duty scrupulously to guard the veracity of his factual assertions. As the Third Circuit recognized in *Somers, supra,* "[t]he doctrine serves to permit neutralization of improper defense arguments; it does not operate as a license for improper affirmative attacks upon defendants." 496 F.2d at 741.

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.
295 U.S. at 88, 55 S.Ct. at 633.

**308**

▮▮▮ Although the Court concludes that the prosecutor's comments were based on evidence outside the record, such a finding does not *per se* require a new trial. Prejudice to the defendant must be demonstrated, unless the remarks constitute an expression of the prosecutor's personal opinion of the guilt of the defendant. *United States v. Homer*, 545 F.2d 864 (3d Cir. 1976); *United States v. Somers, supra*, at 740. *See also United States v. Benson, supra*, at 981; *United States v. Leftwich*, 461 F.2d 586, 590 (3d Cir. 1972). Although they were based on facts not in evidence, the prosecutor's statements in this case did not express a personal belief in the defendant's guilt, and the evidence of prejudice to Mr. Brisco's defense is insufficient to warrant granting him a new trial. As previously noted, the Court twice cautioned the jury to disregard prosecutorial comments having no support in the evidence. Prior to charging the jury, the Court instructed as follows:

> Before I instruct you as to the law, I want to give you a separate instruction which goes to one facet of the closing argument.
>
> Mr. McDonald [the prosecutor] stated to you something to the effect that GX–3 is the size of a bag of heroin used by a wholesaler. You are specifically instructed that you are to disregard that comment because there is absolutely no evidence that that size bag is used by a wholesaler. There is no evidence to that effect, and you are to disregard it, and you accept the bag just as any other evidence.[9]

In the course of deliberations, the jury posed a question to the Court noting the prosecutor's reference to Special Agent Dorsey as "a dealer from New Jersey," and inquiring whether this fact was in evidence. The jury was instructed as follows:

> You are correct that there was no testimony that Mr. Dorsey presented himself

to the defendant as a dealer from New Jersey.

> You are cautioned and reminded that statements of counsel are not evidence. The only evidence in this case which you should consider is the physical exhibits which you have in the jury room and the testimony of witnesses and the inferences that can be drawn from that testimony.
>
> I repeat and stress again to you, statements of counsel are not evidence. You should not consider any statement of counsel as a fact in this case. The facts must come from the witness stand and then of course the exhibits introduced through the witnesses.[10]

The Court is satisfied that these instructions were sufficient to neutralize any prejudice that might have flowed to the defendant from the prosecutor's improper arguments, and to offset any presumption the jury might have indulged in favor of the prosecutor's inherent credibility. Furthermore, that the jury was aware of evidentiary details and able to appreciate the impropriety of arguments based on facts not in evidence is graphically demonstrated by the question it raised concerning Special Agent Dorsey's characterization.[11] Likewise, the verdict in this case—which found the defendant guilty of possession with intent to distribute on one occasion but guilty only of simple possession on the second occasion—reflects the jury's capacity to perform a careful sifting of the evidence without falling prey to the seduction of counsel's arguments. Unlike *United States v. Berger, supra*, this case is not one in which the Court can characterize the evidence against the defendant as weak or unreliable. 295 U.S. at 88–89, 55 S.Ct. 629. *See also United States v. Somers, supra*, at 741. It is concluded that under the circumstances of this case, the prosecutor's references to facts not in evidence are not sufficiently prejudicial to require a new trial.

9. C–65.

10. C–99.

11. The jury's written inquiry read as follows: Question: In his summation, the U. S. Attorney said that Special Agent Dorsey was posing (presumably to the defendant) as "a dealer from New Jersey." This had not been mentioned before. Why not, and is it indeed how Dorsey had identified himself?

■ Defendant also contends that the following comment by the prosecutor constitutes a reference to the defendant's failure to testify:

> The summation on the part of the defense has a good deal of heat, a good deal of life, and precious little substance. The defense calls upon you to speculate, to guess, to imagine, to rely on could-be's and would-be's and maybe's. But when you cut through all of the fluff and the bluster, there is precious little there. There is nothing there to counteract the facts, the hard, clear, firm, well-established facts that were presented by the Government. . . .[12]

If the quoted paragraph can be characterized as a comment on Mr. Brisco's failure to take the stand, it deprived him of his Fifth Amendment privilege against self-incrimination and under *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), his conviction may not stand. "In determining whether a prosecutor's remark constitutes an *improper comment on an ac-cused's failure to take the stand in his own behalf*, the proper test is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" *United States v. Dansker*, 537 F.2d 40, 63 (3d Cir. 1976), *citing United States v. Chaney*, 446 F.2d 571, 576 (3d Cir. 1971). When the quoted comment is considered in context, the Court concludes that the prosecutor was merely noting the defendant's failure to challenge or contradict critical evidence presented by the government. Such evidence could have been attacked in a variety of ways and would not necessarily have required testimony from the defendant, and therefore the remarks cannot be viewed as embodying a comment on Mr. Brisco's failure to testify. Although the prosecutor might have been more persuasive had he cited specific pieces of evidence left unrebutted by the defense, he was well within the bounds of proper advocacy in urging that the government's evidence was more cohesive and factually supported than was the defendant's. *See United States v. Craig*, 573 F.2d 455, 494 (7th Cir. 1977). Retrial is not required on the ground of a Fifth Amendment violation.

■ Next the defendant contends that the prosecutor's summation improperly invaded the province of the Court, to the prejudice of the defendant, when he made the following remark:

> The mere conviction means simply that he is subject to penalties, and there are a wide range of penalties. It does not necessarily mean that incarceration will result.[13]

Although such argument might be of questionable propriety if made in the opening portion of the government's summation,[14] in this case the comment must be viewed as a direct response to remarks made in defense counsel's argument. Apparently seeking to impress upon the jury the serious nature of the crime with which Mr. Brisco was charged and the severe penalties to which he was exposed, the defense attorney referenced a New York state statute mandating a sentence of life imprisonment for persons convicted of drug dealing. The prosecutor's statements must be viewed as a reasonable attempt to neutralize this line of argument, and any possible impropriety is further eradicated by the fact that the prosecutor contemporaneously reminded the jurors that they need not be concerned with questions of sentencing.

■ Finally, the defendant has cited various other prosecutorial comments that he characterizes as inflammatory and appealing to the jury's prejudices. The Court has considered each comment challenged in the defendant's brief, and concludes that neither their isolated nor their cumulative affects warrant retrial of this defendant. Several of the comments involved references to drug traffic and Mr. Brisco's role in it, and these remarks fall within the category that the Court has already found

---

12. C–49.

13. C–59.

14. *Cf. Chapman v. United States*, 443 F.2d 917 (10th Cir. 1971).

to be improper but insufficiently prejudicial to taint the conviction. Other comments must be viewed as proper responses to defense counsel's argument.[15] The remaining challenged comments are proper, albeit imprecise, comments upon the persuasiveness of defendant's evidence.[16]

Because the Court has found no prosecutorial misconduct sufficiently prejudicial to warrant retrial in the case, defendant's motion for a new trial will be denied.

---

**15.** See, for example:

. . . We take flack and derision from defense counsel because the agents are "hotshots" or top narks. Well, all of this is simply a ploy on the part of defense counsel to distract you, to take your eye off the ball.

**16.** See, for example:

Mr. Ramunno referred to gaps in the Government's case. I submit to you that the defense case is one huge gaping hole—nothing there.

