STATE of Wisconsin, Plaintiff-Respondent,

v.

Francis P. WOLFF, Defendant-Appellant.

Court of Appeals

*No. 91-2812-CR. Submitted on briefs July 14, 1992.—Decided
September 10, 1992.*

(Also reported in 491 N.W.2d 498.)

For the defendant-appellant the cause was submitted on the brief of *Daniel P. Dunn* of *Dunn Law Offices* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. Frank Wolff appeals from a judgment of conviction and sentence and an order denying his postconviction motions. Following a jury trial, Wolff was convicted of arson to property other than a building contrary to sec. 943.03, Stats., and acquitted of arson to a building contrary to sec. 943.02, Stats. He was sentenced to two years (stayed) and placed on probation for four years.

He raises two issues on appeal. First, he argues that the trial court erred by admitting "other acts" evidence over his objection and by not performing the necessary balancing test under sec. 904.04(2), Stats. Second, he claims that the trial court erred when it overruled his objection to the prosecutor's reference to potential pen-

alties in his closing argument. We see no error and affirm the judgment and order.

The charges against Wolff were based on an incident when he burned down a barn on his property which contained several items of personal property belonging to Nancy Goike. Much of Wolff's defense was based on his assertion that Goike had consented to his acts. He testified that Goike had not objected to his burning of the barn until the "last minute," and that a "party atmosphere" prevailed as they burned the barn because "[e]verybody was happy and having a good time." He also testified at some length concerning his personal relationship with Goike, stating, among other things, that he and Goike continued their relationship after the fire.

Attempting to rebut that testimony, the prosecutor questioned Wolff on other aspects of his relationship with Goike. He focused on two incidents: one where Wolff fired a pistol into Goike's son's fish aquarium, and another when he "rammed" Goike's car with his truck. Wolff objected to this testimony on grounds of relevance, and the trial court overruled the objections, stating that Wolff had opened the door to such questions by his own testimony.

Then, as part of its rebuttal case, the state called a minister, Sarah Chaney, who testified about the general characteristics of abusive relationships and their effect on the participants. Again, Wolff objected, arguing alternatively that the testimony was irrelevant and lacked proper foundation. The objection was overruled.

In his closing argument to the jury, defense counsel stated that the charge of arson to a building was a felony and that Wolff had been "grossly·overcharged" by the district attorney. The trial court overruled the prosecutor's objection. Then, in response, the prosecutor stated

to the jury that it was up to the court to sentence Wolff and that the court could impose probation without incarceration. Defense counsel's objection to the remark was similarly overruled. Other facts will be discussed in the body of the opinion.

## Other Wrongs Evidence

Wolff challenges the admission of testimony about his prior acts toward Goike and her son, and the testimony of Rev. Chaney, as improperly received "other wrongs" evidence. As we have noted above, however, his objections to this testimony at trial were grounded solely on grounds of relevancy (and, with respect to the Chaney testimony, also on grounds of lack of proper foundation).

■■■■

Section 901.03(1)(a), Stats., requires that an objection must make clear the specific grounds upon which it is based. In *State v. Hartman,* 145 Wis. 2d 1, 9, 426 N.W.2d 320, 323 (1988), the supreme court stated: "We have . . . held that objections to the admissibility of evidence must be made promptly and in terms which inform the circuit court of the exact grounds upon which the objection is based. Moreover, an objection preserves for appeal only the specific grounds stated in the objection." (Citations omitted.)

■■■■

Thus, by failing to object to the challenged testimony on other wrongs grounds, Wolff has failed to preserve that objection for appeal, and we need not consider his arguments further.[1]

---

[1]Given the nature of his objections at trial, the futility of his "new" challenge on appeal is apparent. He argues, for example, that the trial court abused its discretion in failing to reject the evidence on other wrongs grounds; yet he never requested the

## Improper Closing Arguments

Wolff's attorney began his closing remarks to the jury by referring to the district attorney's discretion to charge crimes and the decision made in this case to charge Wolff with "arson to a building [which] is a Class B Felony." The prosecutor objected to the remark as improper argument and the trial court overruled the objection. Defense counsel continued his argument, stating at various points: (1) that Wolff had been "grossly overcharged" on the arson-to-building count; (2) that the prosecutor "called in the big guns—the big, big guns—the big, big, big guns and issued charges of arson to a building," and that such a charge was "just wrong. It's just wrong"; and (3) that the district attorney could have charged other, lesser offenses which were more appropriate but instead was "using the charges way out of proportion" to the facts of the case.

The prosecutor began his closing argument by stating that he wanted to elaborate on defense counsel's "lecture . . . on the relative function of different officials involved in the criminal justice system." He went on to briefly discuss the district attorney's charging function and then stated:

> Similarly, the judge, once a district attorney has filed charges an[d] obtained a conviction . . . it's up to the judge to decide what an appropriate penalty is

court to exercise any such discretion. He also argues that the trial court erred by failing to balance the probative value of the evidence against its possible prejudicial effects, as is required when an other wrongs objection is raised; but, again, by failing to raise that objection, he never asked the court to strike any such balance. *Haskins v. State,* 97 Wis. 2d 408, 414–15, 294 N.W.2d 25, 31 (1980).

> among a wide range of penalties for any given offense.
>
> This big, big, big, big charge that we have leveled against Mr. Wolff might be punished by Judge Houck by probation without incarceration.

Defense counsel objected that it was "improper to argue sentencing at trial," and the court overruled the objection, stating that the remarks were not inappropriate in light of counsel's earlier arguments regarding the severity of the felony charge.[2] Wolff argues on appeal that the prosecutor's remark warrants reversal of his conviction because it violated his right to a fair trial.

It is improper for the prosecutor to refer to possible penalties in closing argument. *State v. Garnett,* 243 Wis. 615, 617–18, 11 N.W.2d 166, 167 (1943). It is also true, as Wolff suggests, that a prosecutor's misconduct can rise to such a level that the defendant is denied his or her due process right to a fair trial. *Darden v. Wainwright,* 477 U.S. 168, 181 (1986), *reh'g denied,* 478 U.S. 1036 (1986). The test to be applied when a prosecutor is charged with misconduct for remarks made in argument to the jury is whether those remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.,* (quoting *Donnelly v. De Christoforo,* 416 U.S. 637, 643 (1974)).

We recognize, too, that counsel should be allowed considerable latitude in closing argument, and that the trial court has discretion to determine the propriety of counsel's statements and arguments to the jury. *State v.*

---

[2]The trial court also considered the fact that there had been testimony from a witness, elicited by Wolff's counsel, that arson to a building was a Class B felony, and as such was "a much more serious offense than . . . arson to personal property."

*Bergenthal,* 47 Wis. 2d 668, 681, 178 N.W.2d 16, 24 (1970), *cert. denied,* 402 U.S. 972 (1971). "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements . . . must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young,* 470 U.S. 1, 11 (1985).

■

In light of the foregoing considerations, courts have developed the "invited reply" or "measured response" rule. In *Young,* for example, the Supreme Court noted that "most Courts of Appeal . . . have refused to reverse convictions where prosecutors have responded reasonably in closing argument to defense counsel's attacks, thus rendering it unlikely that the jury was led astray." 470 U.S. at 12. We reached a similar conclusion in *State v. Edwardsen,* 146 Wis. 2d 198, 430 N.W.2d 604 (Ct. App. 1988). In that case, the defendant objected that the prosecutor had commented on his failure to testify, thus violating his constitutional right against self-incrimination. We upheld the conviction, noting that the defendant, in his own argument had suggested a reason for his silence. We concluded:

> In the instant case, the prosecution's comment constituted no more than a pertinent and measured reply to defendant's calling attention to his own failure to testify. As such, the comment did not violate constitutional prohibitions safeguarding defendant's right to remain silent. *Id.,* 146 Wis. 2d at 215, 430 N.W.2d at 611.

■

It is not a black-and-white rule. That an argument or comment may have been invited by the other side does not invariably compel the conclusion that it can

168

never be considered error. As the Supreme Court stated in *Young,* 470 U.S. at 12: "[T]he issue is not the prosecutor's license to make otherwise improper arguments, but whether the prosecutor's 'invited response,' taken in context, unfairly prejudiced the defendant."

Properly understood, the rule does not condone the prosecutor's descending to the level of defense counsel, nor does it embrace the proposition that two wrongs make a right. "[I]t merely recognizes that the impact on the defendant from the prosecutor's misbehavior may be less if the defendant's counsel aroused the jury against the prosecutor . . .. The prosecutor's misconduct may just have offset the defense counsel's misconduct, thus producing no net effect on the jury deliberations. *United States v. Mazzone,* 782 F.2d 757, 763 (7th Cir. 1986), *cert. denied,* 479 U.S. 838 (1986) (citation omitted).

The rule recognizes the reality that criminal trials "do[ ] not unfold like a play with actors following a script," and that our adversary system permits the district attorney to "prosecute with earnestness and vigor," as long as the blows struck, however hard, are not "foul ones." *Young,* 470 U.S. at 7, 10. And its import has been that "if the prosecutor's remarks were 'invited' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." *Id.* at 12-13. Thus, where the argument of the defense "clearly invited and provoked the remark of the prosecutor . . . the appellant cannot complain because his argument backfired." *State v. Yancey,* 32 Wis. 2d 104, 116, 145 N.W.2d 145, 151 (1966).

■

We believe that is the case here. The prosecutor's remarks were indeed invited by defense counsel's repetition of his "overcharging" remarks, and they constituted a measured and reasonable response. And while the more

desirable course of action might have been to sustain the prosecutor's initial objection, with an appropriate cautionary word to the jury,[3] *see Young,* 470 U.S. at 14, we see no error, constitutional or otherwise, that would warrant overturning Wolff's conviction because of the prosecutor's remarks.[4]

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. *(dissenting).* The court concludes that the defendant waived objection to the admission of other acts evidence because he did not object at trial that such evidence was inadmissible under sec. 904.04(2), Stats. However, defendant did object at trial that such evidence was inadmissible because it was irrelevant or lacked foundation. He has, therefore, preserved his objection, and because he renews his objection here, we must consider his argument. I conclude that the evidence was inadmissible and that any marginal relevance was outweighed by its unfair prejudicial effect. Therefore, I dissent.

Shortly before the fire which consumed her personal property and for which defendant was charged, defen-

---

[3]Indeed, the trial court, on reflection, remarked at the post-conviction motion hearing that this might have been the better course.

[4]Courts in other jurisdictions have generally refused to reverse in similar situations. *See, e.g., United States v. Brisco,* 473 F. Supp. 303, 309 (D. Del. 1979), *aff'd,* 615 F.2d 1354 (3d Cir. 1980), *cert. denied,* 446 U.S. 922 (1980); *Henderson v. State,* 460 So. 2d 331, 333 (Ala. Crim. App. 1984); *State v. Jaramillo,* 520 P.2d 1105, 1106-07 (Ariz. 1974); *Jackson v. State,* 328 S.E.2d 741, 743-44 (Ga. App. 1985); *State v. Cordova,* 674 P.2d 533, 536-37 (N.M. App. 1983); *State v. Brown,* 447 P.2d 82, 85 (Wash. 1968); *State v. Wampler,* 569 P.2d 46, 48-49 (Or. App. 1977), *cert. denied,* 436 U.S. 960 (1978).

dant's live-in friend, Nancy Goike, moved to a shelter for women called Passages, Inc. On cross-examination the prosecutor asked the defendant: "What was the incident that precipitated her leaving?" Defense counsel objected that the question asked for irrelevant evidence. The trial court overruled the objection stating, "[T]his was gone into extensively on direct." However, on direct examination, the defendant simply testified that Goike left and went to Passages. Defendant further testified that Goike returned frequently, finally moved back on approximately April 26th and continued to live with him on the farm until August 1990, when she bought a home in Richland Center. The defendant did not testify as to the reason Goike left, either before the fire or in August 1990.

Having established that he could explore what caused Goike to leave, the prosecutor questioned defendant about an incident in which defendant shot an aquarium when Goike's children were present. The prosecutor described this as "mental abuse." He then extensively explored an incident in which the defendant backed into Goike's car on a logging road and knocked it over the bank. The defendant claimed that this was an accident. The prosecutor introduced photographs showing the damaged vehicle and was allowed to present them to the jury.

In rebuttal, the prosecutor called the executive director of Passages. The prosecutor asked her the following question: "Is it seen, in talking to and counseling women who have been the victims of domestic abuse, is it often seen that they will return to the abuser on one or more occasions before they finally .... break the connection?" Defense counsel objected on grounds of lack of foundation and relevancy. The trial court overruled

counsel's objection without stating the reasons for its ruling.

The court here states that, by failing to object to the challenged testimony on "other wrongs" grounds, defendant failed to preserve that objection. However, the defendant objected at trial that the evidence was irrelevant and lacked foundation. Whatever conclusion the court may reach as to this evidence, it may not dismiss consideration of it on the grounds that the defendant did not object to the evidence in the trial court on the proper grounds.

I conclude that not only was the evidence irrelevant, but it was unfairly prejudicial to the defendant. Goike's testimony as to the aquarium and car incidents and the Passages director's testimony as to the battered-woman syndrome had little or no relevance to the issue in this case. The issue was whether Goike had given the defendant permission to burn her property which was stored in the barn. The aquarium and car incidents occurred long before the barn burning.

Of course, unless otherwise explained, the jury could have concluded that Goike's voluntary continuation of her association with the defendant cast doubt on her claim that she did not give the defendant permission to burn her property, which was stored in the barn. The state sought to explain that Goike stayed with defendant because she was a battered woman. However, there was no testimony from anyone, including Goike, that defendant had ever physically abused Goike. Nonetheless, the state suggests that defendant physically abused Goike. It cites the Passages director's testimony that "domestic violence" tends to start with a "violent incident" followed by a honeymoon period which culminates in another "violent incident" and that "physical abuse" is often accompanied by other forms of abuse. The state

argues that: "evidence of the abusive nature of the relationship" put Goike's conduct into its proper context; Goike's resumption of her relationship showed only that she had difficulty extricating herself from her relationship with "an abusive partner in spite of periodic episodes of violence"; "evidence that the defendant previously committed violent acts" against Goike is admissible; defendant "acted violently toward [Goike] in the past"; "evidence of previous violence" was admissible to explain Goike's waiver of her right to restitution; and evidence of the "prior incidents of violence"—the aquarium incident and the car incident—was admissible to show that defendant lied when he denied threatening Goike to get her to waive her right to restitution.

The Passages director was permitted to testify over defendant's objection as to the reaction of women who have been victims of domestic abuse. She referred to the "cycle of violence," the point where "violence explodes again," "the violent episode," "the violence increases," "physical violence" as a symptom in a larger picture, and "break[ing of] the cycle of violence." While the witness was not permitted to testify that what Goike had experienced fit into the pattern or syndrome, the jury could not help but conclude that Goike was the victim of domestic violence, including physical violence, directed at her by the defendant.

I conclude that the objected-to evidence was unfairly prejudicial to the defendant and should have been excluded under sec. 904.03, Stats.

> Evidence is unfairly prejudicial if it has "a tendency to influence the outcome by improper means" or if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish" or otherwise causes a jury "to base its decision on something other than the established propositions in the case."

173

*State v. Gulrud,* 140 Wis. 2d 721, 736, 412 N.W.2d 139, 145 (Ct. App. 1987) (quoting *Lease Am. Corp. v. Insurance Co. of N. Am.,* 88 Wis. 2d 395, 401, 276 N.W.2d 767, 770 (1979)).

The state does not claim that the admission of the objected-to evidence, if error, was harmless. I conclude that the error of admitting the evidence was not harmless. Therefore, I respectfully dissent from the court's decision. I would reverse and remand for a new trial at which such evidence should be excluded.