STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Allan R. KOCH, Defendant-Appellant.

Supreme Court

*No. 86–1126–CR. Argued June 1, 1988.—Decided June 27, 1988.*

(Also reported in 426 N.W.2d 586.)

For the plaintiff-respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Margaret A. Maroney,* assistant state public defender, Madison.

WILLIAM G. CALLOW, J.  The state seeks review of an unpublished decision of the court of appeals which reversed a judgment of conviction entered by the circuit court for Calumet county, Judge Hugh F. Nelson, in which the defendant was convicted of armed robbery, possession of a short-barreled rifle, and possession of a firearm by a felon, all party to a crime.

There are two issues before us on review. The first issue is whether the circuit court abused its discretion when it denied the defendant's request for sequestered voir dire. The second issue is whether the jury instruction on the defense of coercion and the jury instruction on party to a crime were erroneous. Based upon the record before us, we conclude that the circuit court did not abuse its discretion in denying sequestered voir dire. As to the second issue, because the defendant never objected to the jury instructions at trial, he waived his right to review of that issue. Nevertheless, we conclude there is no error in the jury instructions warranting reversal. Accordingly, we reverse the decision of the court of appeals.

In May of 1985, Allan R. Koch (Koch) was charged as a party thereto with (1) armed robbery, (2) possession of a short-barreled rifle, and (3) possession of a firearm by a felon. The charges arose out of a series of events occurring in Calumet county and Sheboygan

county on April 21, 1985. Prior to the trial in Calumet county, Koch was convicted in Sheboygan county of three counts of sexual assault and two counts of kidnapping arising out of conduct occurring in Sheboygan county on April 21, 1985.

On August 21, 1985, Koch's trial in Calumet county began. During voir dire the court asked the jury panel a series of general questions, including, but not limited to, whether any members of the panel were related in any way to Koch or any of his relatives, whether any panel member knew either the defense counsel or the district attorney, and whether any member of the panel had heard or read anything about the case. In response to some of the panel members stating that they had either heard or read about the case, the court inquired whether their exposure to what had been heard or read would influence any of the panel members' determination of the case. Each panel member thereafter responded that his or her determination of the case would not be influenced by what he or she had previously heard or read. In addition, when the court inquired whether anyone on the panel would be unable to try the case fairly and impartially on the evidence received during trial, none of the panel members responded.

After the district attorney questioned the panel members, defense counsel further questioned them. Specifically, defense counsel inquired into the extent of each panel member's prior exposure to the case. After one panel member indicated he had previously heard about the case on the radio at the time the robbery occurred, and a second panel member indicated he had heard about the case through gossip at work, defense counsel requested that the Judge permit "questions of certain individuals in chambers as to

what they had heard so as not to taint any of the other panel members." The circuit court denied this request, telling defense counsel to "[a]sk the questions here, if you want questions asked."

Defense counsel then continued to question the panel members, eliciting admissions from several that they had been exposed to pretrial publicity. In total, eight panel members admitted exposure to pretrial publicity upon questioning by defense counsel. The specific statements by the panel members are as follows: One panel member stated that he had heard something on the radio the day of the robbery but could not remember any details. A second panel member stated that he had heard gossip at work at the time the alleged offense occurred. A third panel member stated that she had read about the alleged offense in the New Holstein Reporter and the Sheboygan Press, as well as through gossip from people at the time of the alleged offense and thereafter. A fourth panel member indicated that he had read about it in The Milwaukee Journal and the Times Journal but that he had not read about it recently. A fifth panel member indicated that he had heard about the incident on television and on radio at the time the alleged offense occurred. A sixth panel member indicated that he had heard about it at the time the incident occurred; while a seventh panel member indicated that he was out of town at the time the incident occurred but that he had heard about it later. Finally, an eighth panel member stated that she read about the incident in the Sheboygan Press.[1]

---

[1] A ninth panel member also admitted being exposed to pretrial publicity. That panel member, however, was struck for cause for reasons unrelated to the pretrial publicity. Moreover, the

After the eighth panel member indicated exposure to pretrial publicity, defense counsel and the district attorney approached the bench at the request of defense counsel. At that time defense counsel renewed his request for a sequestered voir dire, limited to certain panel members, "in that one of the articles in the Sheboygan Press, as well as articles in the New Holstein Reporter, had indicated that the defendant Allan Koch had been convicted on a companion charge in Sheboygan county, and [defense counsel] wanted to ask certain questions about what [the specific panel members] had read about this matter about Mr. Koch, without tainting the other members of the panel." The court denied the request, stating "[i]ndividual voir dire is not a matter of right. It is a matter of discretion for the court to determine, to permit or deny, and under the circumstances, the court felt there was no necessity for it."

Following the completion of voir dire, defense counsel used three of his four peremptory challenges to strike panel members who were exposed to pretrial publicity. The district attorney also struck one panel member who had been exposed to pretrial publicity, leaving a jury which included five panel members who were exposed to pretrial publicity.

Prior to trial, defense counsel brought a motion in limine to prevent any reference to the sexual assaults in Sheboygan county. The district attorney agreed not to refer to the sexual assaults, but reserved the right to make references to the facts leading up to the sexual assault.

At trial, the state introduced the following evidence: On April 21, 1985, Allen Pautsch (Pautsch),

ninth panel member was struck before defense counsel requested sequestered voir dire.

armed with a rifle, entered the Sure-Save Self-Serve Laundromat in New Holstein and demanded that the attendant, G.S., give him all the money. After taking approximately $750, Pautsch ordered G.S. and S.P. to follow him outside to a waiting car. Upon entering the car, G.S. and S.P. were told to get down so no one would see them. Neither G.S. nor S.P. were able to see the face of the driver.

The car was then driven to a wooded area, at which time Pautsch ordered G.S. and S.P. to get out of the car and walk into the woods. A short time later, the driver, wearing a mask, followed them into the woods. Pautsch then taped G.S. and S.P. and had some contact with G.S. During the period in which Pautsch taped G.S. and S.P., and while Pautsch had contact with G.S., the driver of the car held the rifle which Pautsch had originally been carrying.

The state also presented testimony by Detective Thomas Kretschman. Kretschman testified that Koch gave Detective Kretschman a statement admitting that Koch was the driver of the car and that Koch had held the rifle while G.S. and S.P. were taped.

Koch's defense essentially was that he was coerced into committing or aiding Pautsch in committing the crimes by Pautsch's threats to kill Koch, G.S., S.P., or others. Koch testified he had met Pautsch while both were confined at the Kettle Moraine Correctional Institution. After both were released, Pautsch contacted Koch because Pautsch "wanted to do some armed robberies or burglaries."

Koch then testified to a series of events beginning with Pautsch stopping at Koch's house on Friday, April 19, 1985, and ending with both their arrests on Monday, April 22, 1985, the day after the robbery at the laundromat. The essence of Koch's testimony was

that Pautsch arrived at Koch's house on April 19 armed with a gun and that Koch unwillingly accompanied Pautsch throughout the weekend. According to Koch, he initially tried to stall so Pautsch would leave without Koch and that later Koch got their car stuck twice in the hope that Pautsch would decide not to commit any burglaries. Koch also testified that, although he had opportunities to escape, he did not do so because of his fear that Pautsch would kill someone.

Koch further testified to the following: On April 21, 1985, Koch drove Pautsch to the Sure-Save Self-Serve Laundromat. Although Koch considered driving away while waiting outside, Koch was afraid that, if he drove off, Pautsch would kill whoever was in the laundromat. After Pautsch returned from the laundromat with G.S. and S.P., Koch drove to a wooded area. Although he initially refused to accompany Pautsch into the woods, Koch eventually put on a mask given to him by Pautsch and followed Pautsch, G.S., and S.P. into the woods. While in the woods, Koch held the rifle for a minute while Pautsch taped S.P. Koch testified that he did not shoot Pautsch because of a concern that Koch would be charged with first-degree murder, as well as armed burglary, and also because he was afraid he would hit S.P. and not Pautsch.

In summation, Koch testified that (1) he did not voluntarily go with Pautsch on April 19; (2) he did not want or intend to commit any of the crimes he testified to committing; (3) he believed that if he refused to go with Pautsch, Pautsch would have shot him; (4) he believed that if he had driven off when Pautsch went into the laundromat, Pautsch would have killed the people in the laundromat; (5) he believed he could not have escaped from Pautsch

without causing harm to someone else; (6) he believed that if he had driven off when Pautsch took G.S. and S.P. into the woods, Pautsch would have killed both G.S. and S.P.; and (7) he believed that if he had tried to stop Pautsch while they were in the woods, he might have accidentally shot S.P.

At the close of evidence, the circuit court instructed the jury on armed robbery, possession of a short-barreled rifle, possession of a firearm by a felon, and party to a crime. For each of the charged offenses, the court also instructed the jury that it was to consider the defense of coercion. There were no objections raised to the instructions given by the circuit court. On August 22, 1985, the jury found Koch guilty of armed robbery, possession of a short-barreled rifle, and possession of a firearm by a felon.

On April 9, 1986, Koch filed a postconviction motion requesting that the verdict be set aside and a new trial ordered. In support of his motion, Koch alleged that the circuit court erred in refusing defense counsel's request for sequestered voir dire and that the jury instructions on the defense of coercion were erroneous. In support of his contention that the circuit court erred in denying sequestered voir dire, Koch submitted articles from the New Holstein Reporter and the Sheboygan Press which reported on Koch's prior conviction in Sheboygan county. Specifically, the articles mentioned that Koch was convicted of three counts of sexual assault, that the jury had rejected Koch's coercion defense, that Koch was sentenced to seventy years, and that Koch showed no emotion when the sentence was read.

The circuit court denied Koch's motion for postconviction relief. According to the circuit court, there was no need for sequestered voir dire because

the questioning by the court and counsel failed to disclose any reluctance by any of the prospective jurors to discuss pretrial publicity and because each who acknowledged being exposed to pretrial publicity stated that he or she had formed no opinion and was capable of reaching a fair and impartial verdict. The court also concluded that (1) there was sufficient evidence of a conspiracy to warrant a conspiracy instruction, and (2) the jury instructions set out correctly the law for party to a crime and the coercion defense. Koch appealed to the court of appeals.

The court of appeals reversed the judgment of conviction entered by the circuit court. According to the court of appeals, the nature and the content of pretrial publicity must be considered to determine whether individual voir dire is necessary. Moreover, when potential jurors admit exposure to pretrial publicity, a general form of questioning is inadequate to identify the nature and quantity of information harbored by the potential jurors who had been exposed to the pretrial publicity. Because the nature of the publicity in this case raised a significant possibility of prejudice, the court of appeals concluded that the cursory questioning by the circuit court was inadequate. Instead, the court of appeals held that "a limited *voir dire* outside the presence of other chosen and prospective jurors is the better practice when it is established that potential jurors have likely been exposed to prejudicial material." Because the court of appeals was not satisfied that the circuit court's voir dire eliminated potential jurors who had been subjected to prejudicial pretrial publicity, the court of appeals held that a new trial was necessary.

The court of appeals declined to address Koch's contention that the jury instructions on coercion and

party to a crime were erroneous. According to the court, because Koch failed to object to the instruction at trial, his claim of error was waived. The court of appeals did note, however, that it believed there was a possibility of confusion and that on retrial Koch would have the opportunity to properly object to the instruction.

On November 10, 1987, we accepted the state's petition for review.

The first question before us on review is whether the circuit court erred when it denied Koch's request for sequestered voir dire of those panel members who had indicated they were exposed to pretrial publicity. We begin by noting that control of the voir dire rests primarily with the circuit court. The circuit court has broad discretion over the form and number of questions to be asked, as well as the decision of whether prospective jurors should be questioned collectively or individually out of the presence of the other prospective jurors. *Hammill v. State,* 89 Wis. 2d 404, 408, 278 N.W.2d 821 (1979); *see State v. Herrington,* 41 Wis. 2d 757, 765–66, 165 N.W.2d 120 (1969). Absent an abuse of discretion, a circuit court's decision concerning voir dire should not be disturbed upon appeal. This broad discretion, however, is subject to the essential demands of fairness. *Hammill,* 89 Wis. 2d at 408.

Koch argues that the circuit court abused its discretion because it did not consider the fact that the pretrial publicity was highly prejudicial and contained inadmissible evidence. Specifically, he notes the repeated newspaper references to the sexual assault in Sheboygan county and the discussion of the Sheboygan trial. What Koch appears to ignore entirely is that the circuit court did not have any evidence of

the pretrial publicity before it when it ruled on Koch's motion for sequestered voir dire. It is fundamental that, before a court can properly exercise its discretion based upon an allegation of pretrial publicity, there must be some evidence before the court as to the nature and content of the pretrial publicity. *United States v. Gerald,* 624 F.2d 1291, 1297 (5th Cir. 1980), *cert. denied,* 450 U.S. 920 (1981).

In the present case, Koch requested sequestered voir dire at two separate times. When he initially requested sequestered voir dire, the information before the court was limited to statements by several jurors that they had learned about the case primarily at the time of the alleged incident either through the newspaper, radio, or gossip. When Koch renewed his request for sequestered voir dire, the information known by the court was essentially the same, i.e., eight of the prospective jurors stated they had either read about the incident in the newspaper, overheard gossip, and/or heard about the incident on the radio. Although the court was aware that some of the prospective jurors had been exposed to pretrial publicity, the record indicates that, at the time Koch requested sequestered voir dire, the court did not have any substantial evidence before it of the nature or extent of the pretrial publicity.

At the motion for postconviction relief, defense counsel introduced into evidence the articles from the New Holstein Reporter and the Sheboygan Press. However, these articles were not before the court when it ruled on counsel's requests for sequestered voir dire and, therefore, cannot provide a basis for the circuit court to permit sequestered voir dire. Because the circuit court had no information before it concern-

ing the nature and content of the pretrial publicity, we conclude that the court's decision to deny Koch's motion for sequestered voir dire was not an abuse of discretion.

We further observe that the circuit court's determination that sequestered voir dire was not necessary satisfied the factors implicit in *State v. Dean,* 67 Wis. 2d 513, 528, 227 N.W.2d 712 (1975). In *Dean,* we identified factors which are relevant to a determination of whether the circuit court abused its discretion in denying a defense motion for sequestered voir dire, including: (1) whether the circuit court conducted a thorough initial questioning of the panel members; (2) whether the panel members were reluctant to state whether they had a preconceived notion of the defendant's guilt or innocence; and (3) whether the circuit court imposed any restrictions upon the extent of defense counsel's questioning of the panel members on voir dire.[2]

Looking at the facts in this case, we conclude that the circuit court conducted a thorough initial questioning of the panel members to determine any potential prejudice. Although some panel members indicated they had been exposed to pretrial publicity, each so exposed indicated that he or she could nevertheless try the case fairly and impartially based upon the evidence received during trial. In addition, nothing in the record indicates that any of the panel

---

[2]A fourth factor noted in *State v. Smith,* 117 Wis. 2d 399, 405, 344 N.W.2d 711 (Ct. App. 1983)—whether adverse publicity reached the jury during trial—does not pertain to whether there has been a satisfactory voir dire; it is relevant only to whether the circuit court abused its discretion in not ordering a change of venue sua sponte. *State v. Dean,* 67 Wis. 2d 513, 527–28, 227 N.W.2d 712 (1975).

members were reluctant to state candidly whether they had any preconceived notion of the defendant's guilt.

Finally, and perhaps most important in this case, the circuit court placed no restrictions upon the extent of defense counsel's questioning of the panel members. At the time the circuit court initially declined to grant sequestered voir dire, the court informed counsel that he was free to ask any question of the panel members. Because the circuit court gave unlimited authority to defense counsel to probe the panel members regarding any potential bias, thereby permitting counsel to accomplish an unlimited search of the panel members' exposure to pretrial publicity, the circuit court did not abuse its discretion in denying defense counsel's request for sequestered voir dire.

Next, we turn to the second issue before us, whether the jury instruction on the defense of coercion and the jury instruction on party to a crime were erroneous. We note that Koch did not object to either of the instructions when they were given at trial. Accordingly, Koch waived any error in the instructions. Sec. 805.13(3), Stats.; *Hamed v. Milwaukee County,* 108 Wis. 2d 257, 271, 321 N.W.2d 199 (1982). Koch nevertheless asks that we review the claimed error under our discretionary review authority. *See State v. Schumacher,* 144 Wis. 2d 388, 424 N.W.2d 672 (1988); sec. 751.06, Stats. Looking at the jury instructions as a whole,[3] we conclude there is no error warranting reversal under *Schumacher, supra,* or sec. 751.06.

---

[3]This court looks to the instructions as a whole to determine whether the instructions are erroneous. *Moes v. State,* 91 Wis. 2d 756, 771, 284 N.W.2d 66 (1979).

Because we conclude that the circuit court did not abuse its discretion in denying Koch's request for sequestered voir dire and because we find no error in the jury instructions warranting reversal, we reverse the decision of the court of appeals granting a new trial and reinstate the judgment of conviction.

*By the Court.*—The decision of the court of appeals is reversed.