COURT OF APPEALS
DECISION
DATED AND FILED

November 25, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1671-CR**

Cir. Ct. No. 2015CF4186

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

       PLAINTIFF-RESPONDENT,

  V.

DERON DARNELL LOVE,

       DEFENDANT-APPELLANT.

       APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

       Before White, C.J., Colón, P.J., and Geenen, J.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Deron Darnell Love appeals from a judgment of conviction for human trafficking and kidnapping, as well as the denial of his postconviction motion. Love argues that his constitutional right to counsel was violated, that his right to the effective assistance of counsel was violated, that the circuit court erred when it admitted certain expert testimony, that prosecutorial misconduct occurred, that the court should have granted his request for a new attorney, and that a new trial is necessary in the interest of justice. Upon review, we reject Love's arguments and we affirm.

## BACKGROUND

¶2 Love was charged with human trafficking and kidnapping in September 2015, arising out of a criminal complaint that alleged Love forced Mary[1] to engage in prostitution, and when she stopped, Love kidnapped her by forcing her into a vehicle, beating her, and holding her against her will. The case proceeded to trial in February 2016, during which the State presented testimony and evidence gathered by Milwaukee Police Department (MPD) officers and detectives; a forensics analyst who testified about finding Mary's DNA on Love's clothing; and a Department of Justice special agent who analyzed the cell phone data.

¶3 At the trial, the State also called as witnesses two people who saw Mary being kidnapped by Love from a McDonald's parking lot; the store manager

---

[1] We adopt the pseudonym used by the State for Love's victim in this case. *See* WIS. STAT. RULE 809.86(1) (2023-24) (providing that crime victims should be referred to by a pseudonym or initials to protect their dignity and privacy interests).

All references to the Wisconsin Statutes are to the 2023-24 version.

who authenticated the surveillance video; Mary's parents, who each testified about Mary calling for money after Love kidnapped her; the manager of the Suburban Motel; and Mary, herself, who testified that she was addicted to crack cocaine and heroin during this time period.

¶4 Mary testified that Love placed online advertisements arranging for her to commit acts of prostitution at the Suburban Motel and then took the proceeds. About ten days after she escaped the motel, Love grabbed her from a McDonald's parking lot, beat her, and held her at a second location. She escaped, called the police, and was treated for injuries.

¶5 The jury found Love guilty of both counts. The circuit court[2] sentenced him to 26 years of initial confinement and 16 years of extended supervision.

¶6 After Love's initial postconviction motion was denied, he pursued a supplemental postconviction motion under WIS. STAT. RULE 809.30.[3] Love alleged a violation of his right to counsel, ineffective assistance of counsel, and prosecutorial misconduct, with different bases than in his initial motion. The court denied the supplemental motion without a hearing. This appeal follows. Additional facts relevant to his claims will be discussed below.

---

[2] The Honorable Jeffrey Wagner presided over Love's trial, sentencing, and postconviction motions. We refer to Judge Wagner as the circuit court. The Honorable M. Joseph Donald presided over certain initial proceedings and granted Love's first attorney's motion to withdraw. We refer to Judge Donald as the trial court.

[3] Love was granted a *Machner* hearing on two of his ineffective assistance of counsel claims in his original November 2017 postconviction motion; however after the hearing all claims were dismissed. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App 1979).

**DISCUSSION**

¶7    Love argues that the circuit court erred when it denied his supplemental motion for postconviction relief without a hearing.  First, he asserts that trial counsel's failure to meet with him and prepare for pretrial proceedings resulted in denial of counsel.  Second, he argues the court erred when it admitted parts of expert witness Detective Lynda Stott's testimony.  Third, he argues trial counsel's representation was ineffective for failing to: (1) move to withdraw earlier; (2) impeach Mary on certain topics; (3) object to vouching by Detective Stott; (4) present a defense to an element of human trafficking; and (5) object to a jury instruction change.  Fourth, Love asserts that the prosecutor committed misconduct in his representation to the circuit court of a prior ruling by the trial court, a change to the jury instructions, and the testimony he elicited from Detective Stott.  Fifth, Love contends the court erred when it denied his request for a new attorney.  Sixth, he argues the real controversy has not been tried and we should order a new trial in the interest of justice.  We reject each argument and address each below.

¶8    When a defendant appeals from the denial of a postconviction motion without an evidentiary hearing, the issue on appeal is narrow.  A defendant is not entitled to an evidentiary hearing on a postconviction motion unless the defendant alleges "sufficient and non-conclusory facts which would entitle the defendant to relief and the record" must not "conclusively establish otherwise[.]" *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608.  Whether a defendant's postconviction motion alleges sufficient material facts to entitle the defendant to a hearing is a question of law that we independently review.  *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory

allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.* Therefore, we review whether the circuit court erroneously exercised its discretion when it denied Love's postconviction motion without an evidentiary hearing. *See **id.***

### I.     *Denial of the right to counsel*

¶9     Love argues that his right to counsel was denied, in effect, at the critical stage of pretrial proceedings when trial counsel did not adequately prepare or investigate his case. When we review a postconviction motion, it must allege "within the four corners of the document itself" the "who, what, where, when, why, and how" of the claim with the "material factual objectivity" necessary for this court to "meaningfully assess" the claim. ***Id.***, ¶23. Reviewing Love's supplemental postconviction motion, his allegations can be summarized as alleging that trial counsel failed to meet with him for 7 weeks during the pretrial phase, only visiting with him on one occasion, 20 days prior to the trial date. Love alleged that this meeting with counsel only occurred after he asked the circuit court to remove counsel and asked the Office of Lawyer Regulation (OLR) for assistance. When counsel did meet with Love, counsel purportedly failed to ask for Love's version of the facts of the case, review discovery materials with him, or

develop a trial strategy with him, including discussing whether Love should testify at trial.[4]

¶10    "An accused's right to be represented by counsel is a fundamental component of our criminal justice system." *United States v. Cronic*, 466 U.S. 648, 653 (1984).  "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage" of the criminal proceedings.  *Id.* at 659.  A *Cronic* claim "lies only when there is a '*complete* denial of counsel during a critical stage.'" *Schmidt v. Foster*, 911 F.3d 469, 480 (7th Cir. 2018).[5]    Love alleges that counsel's pretrial preparation and investigation were inadequate, asserting that presence at formal proceedings is not enough.  Love refers to the ABA Standards for Criminal Justice in support of the kinds of pretrial preparation trial counsel should have done;

---

[4] We note that Love was granted a *Machner* hearing in response to his original postconviction motion's claim that trial counsel told him that if he testified, his prior drug convictions would be used against him in this case.  Trial counsel denied those statements and testified that he discussed Love's right and option to testify and informed Love that the substance of his prior convictions would only enter this case if he opened the door.  The circuit court denied this claim and found that trial counsel met with Love multiple times prior to the trial.  To the extent that Love argues now that trial counsel should have consulted with him earlier in the pretrial proceedings, we conclude that the court's finding of fact was not clearly erroneous and therefore, the record conclusively demonstrates this part of the claim does not entitle Love to relief.

[5] The complete denial of counsel can be shown by counsel's physical absence, counsel's failure to submit the State's case to meaningful adversarial testing, or under circumstances where even "competent counsel very likely could not" render assistance.  *Bell v. Cone*, 535 U.S. 685, 695-96 (2002).  Here, Love's allegations arise from absence, and we do not further discuss the other two *Cronic* paths.

however, he offers only conclusory allegations to connect those standards to a critical stage of his case.[6]

¶11     While we acknowledge that Love may have been dissatisfied with trial counsel's performance, he was not completely denied counsel.  The record reflects that trial counsel consulted with Love, as he admits, 20 days before trial, and that counsel actively participated in Mary's deposition.  The State argues it is reasonable to infer that trial counsel discussed the case with Love prior to the deposition because counsel questioned Mary about a consensual sexual relationship between Love and Mary, and about whether Mary drove Love's vehicle.  The State also argues it is reasonable to infer from trial counsel's statement in the withdrawal motion that he and Love "disagree about the merits and ethics of certain motions and strategies to pursue in this case" that trial counsel and Love communicated enough about strategy to disagree.  Although Love argues that counsel's conduct at the deposition does not prove counsel spoke with Love about his version of the facts of the case and counsel could have drawn those topics from the police reports, ultimately, the record reflects a level of preparation in Love's case that cannot be considered a complete denial of counsel. *See Cronic*, 466 U.S. at 653.

¶12     We conclude that the record conclusively demonstrates Love is not entitled to relief on this claim.  *See Jackson*, 405 Wis. 2d 458, ¶8.  Therefore, the

---

[6] The Supreme Court stated, "what makes a stage critical is what shows the need for counsel's presence." *Rothgery v. Gillespie Cnty., Tex.*, 554 U.S. 191, 212 (2008).  In pretrial proceedings, critical stages have been recognized generally to include court appearances, the preliminary hearing, pretrial lineups, interrogations, psychiatric exams, and arraignments. *Id.* at 217 (Alito, J., concurring).

circuit court acted within its discretion when it denied the claim without a hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

>        II.        *Admission of expert witness testimony*

¶13    Love argues that the circuit court erred when it admitted parts of Detective Stott's expert testimony. He contends that her testimony usurped the jury's function because she testified that the evidence in this case constituted human trafficking. Love also argues that the circuit court incorrectly applied *State v. Hogan*, 2021 WI App 24, 397 Wis. 2d 171, 959 N.W.2d 658, to the admission of her expert testimony.

¶14    The admission of expert testimony is governed by WIS. STAT. § 907.02. An expert witness must be qualified, the testimony must be relevant, and the testimony must be reliable. *Hogan*, 397 Wis. 2d 171, ¶19. "It is within the circuit court's discretion whether to admit proffered expert testimony." *State v. Dobbs*, 2020 WI 64, ¶27, 392 Wis. 2d 505, 945 N.W.2d 609. "A [circuit] court's decision on admissibility or exclusion of expert evidence is an erroneous exercise of discretion when a decision rests upon a clearly erroneous finding of fact, an erroneous conclusion of law, or an improper application of law to fact." *Seifert v. Balink*, 2017 WI 2, ¶93, 372 Wis. 2d 525, 888 N.W.2d 816.

¶15    We turn to the record. Detective Stott testified about the methods of control by which sex workers can become victims of human trafficking, discussing persuasion, force, or access to addictive substances. The State asked Detective Stott whether these methods of coercion applied to this case, and when asked to rephrase the question, the State asked if heroin was used to control Mary. Trial counsel objected several times during this line of questioning on the basis that the prosecutor was making conclusions of a legal nature as to the definition of human

trafficking and the prosecutor was presenting argument to the jury through a witness. The court sustained each objection and directed the State to rephrase. The prosecutor asked Detective Stott if she saw "that level of control here … in your training and experience, to move this prostitution to human trafficking?" The detective answered, "Yes." Further, Detective Stott interpreted a text message Mary's phone received from Love's alleged cell phone in which Mary, who had testified earlier in the trial to being addicted to heroin and crack cocaine, was instructed not to purchase or obtain drugs from other people.

¶16 In Love's postconviction motion, he argued that Detective Stott's testimony went beyond exposition regarding human trafficking principles and characteristics, admissible under WIS. STAT. § 907.02(1). He asserted that the detective testified that the crime of human trafficking occurred here, which usurped the jury's function as the finder of facts and its role as ultimate arbiter of Love's guilt. He contended that Detective Stott's testimony, in which she opined that Love's conduct constituted human trafficking, was improper expert testimony.

¶17 Love posits that an expert may not testify as to whether a crime occurred. While this legal principle is undisputed, we are mindful that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." WIS. STAT. § 907.04. "The 'ultimate issue' may not, however, be one that is a legal concept for which the jury needs definitional instructions." *Lievrouw v. Roth*, 157 Wis. 2d 332, 351-52, 459 N.W.2d 850 (Ct. App. 1990).

¶18 The State argues that Detective Stott did not offer a legal conclusion that the charged crime of human trafficking occurred. The record reflects that the detective testified whether, based on her training and experience, the facts of this

case showed the level of control and conduct typically seen in human trafficking cases. She was not asked, and did not testify about, the three elements of human trafficking upon which the jury was instructed and tasked with deciding whether the State proved those elements beyond a reasonable doubt.

¶19 Love also took issue with the circuit court's conclusion in its postconviction decision that all of Detective Stott's testimony was admissible under WIS. STAT. § 907.02(1). He asserts that she was not offered as an opinion expert witness, but as an exposition expert witness who was prohibited from applying general principles to the facts of the case. We conclude Love misreads *Hogan*, and its quote from *Dobbs*. *Hogan*, 397 Wis. 2d 171, ¶27 n.8; *Dobbs*, 392 Wis. 2d 505, ¶42 (stating § 907.02(1) "continues to permit an expert witness to testify in the form of an opinion 'or otherwise,' including exposition testimony on general principles without explicitly applying those principles to, or even having knowledge of, the specific facts of the case"). Our supreme court states nearly the opposite of Love's claim—offering exposition testimony on general principles does not *require* the expert to apply those principles to the facts of the case. This holding does not *prohibit* testimony applying the general principles to the facts.

¶20   We conclude Love has not shown an erroneous exercise of discretion by the circuit court in admitting Detective Stott's testimony.[7]   The circuit court's decision to admit this testimony was based on a consideration of relevant facts applied to the proper standard of law.  *See Seifert*, 372 Wis. 2d 525, ¶93.

### III.    *Ineffective assistance of counsel*

¶21   Love argues that trial counsel provided ineffective assistance during trial.  He asserts six claims, including that trial counsel failed to: (1) timely file his motion to withdraw; (2) cross-examine Mary on how she benefited from the State's actions after her deposition; (3) impeach Mary on parts of her testimony; (4) object to Detective Stott's testimony vouching for Mary; (5) object to a change in the jury instruction language; and (6) present a viable defense that the State did not prove the third element of human trafficking.

¶22   For Love's claim of ineffective assistance of counsel to succeed, he must make two showings: (1) that trial "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense."   ***Strickland v.***

---

[7] The parties each raise forfeiture arguments as to the admissibility of Detective Stott's testimony.  The State argues that Love failed to object to the detective's testimony at trial and raises a new argument on appeal that she was impermissibly vouching for Mary.  Love argues that the State did not argue to the circuit court at trial or during postconviction proceedings that Detective Stott's testimony was admissible under WIS. STAT. § 907.02.  "The values protected by the forfeiture and waiver rules would not be protected in the instant case by applying a forfeiture or waiver rule to either the defendant or the State."  *State v. Ndina*, 2009 WI 21, ¶38, 315 Wis. 2d 653, 761 N.W.2d 612.  We decline to untangle the forfeiture claims and address the substance of the issue.  *See State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530 ("The forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case.").

*Washington*, 466 U.S. 668, 687 (1984). To make a showing of deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We need not address both prongs of the ineffective assistance test if the defendant fails to make a sufficient showing on one. *Id.* at 697.

### A.   Timely filing of the motion to withdraw

¶23   Love argues that trial counsel was ineffective for the delay in filing his motion to withdraw. We recite a timeline of appointment of counsel. Love was charged in September 2015; trial counsel was appointed to represent him in November after his original attorney's motion to withdraw was granted. In December, Love wrote to the trial court and OLR, asking each for assistance removing trial counsel. When Love and counsel met on January 12, 2016, Love told counsel he wanted him to withdraw. On January 18, counsel filed a motion to withdraw with the trial court, as the case was still on that docket. Counsel asked the trial court to hear the motion at the final pretrial hearing on January 29; however, counsel did not appear at that hearing because he was in another trial.[8]

---

[8] Love contrasts this case with the results of a motion to withdraw in a different criminal case pending against him in January 2016. Trial counsel, who also represented Love in the other case, appeared in the other court on January 29, and his motion to withdraw as Love's counsel was heard and accepted.

¶24    Love argues that trial counsel unreasonably waited six days after meeting with Love to file the motion to withdraw, from January 12 to January 18. He asserts that if the motion had been filed earlier, it would have been heard earlier, and he would have been appointed a new attorney. He also argues counsel was deficient for failing to have this case recalled on January 29, after he was done with his other trial. Love asserts that if the motion had been heard on January 29, the court would have granted the motion to withdraw. He also contends that, in the alternative, if he and trial counsel had known the motion was denied by January 29, they would have had time to prepare over the weekend before the trial began February 1.

¶25    Love's allegations are conclusory. Although in our review we accept the facts alleged as true, a defendant must proffer material facts and not speculation. *Allen*, 274 Wis. 2d 568, ¶¶12, 15, 33. Love's claim that his request for a new attorney would have been granted if the hearing had occurred earlier is pure speculation.

¶26    The record reflects that counsel's motion to withdraw was heard the following Monday, February 1, 2016, the scheduled beginning of Love's trial. When asked if he was prepared to proceed, trial counsel informed the circuit court, which had taken over the case from the trial court that morning, that while he was prepared, he and Love had a hard time communicating. Love told the court he wanted a new attorney because he did not get all of the discovery, counsel would not file specific motions, and he had only met with counsel once since counsel's appointment.

¶27    The circuit court also heard from the prosecutor, who raised concerns of prejudice from any delay because he had recorded jail calls of Love

trying to have other people persuade Mary not to come to court. The State also informed the court that Love's original attorney moved to withdraw after she had personal safety concerns based on contact by Love's family and friends. The prosecutor further alluded to the trial court's concerns about "game playing" during the withdrawal of Love's original attorney.

¶28 We conclude that Love has failed to allege sufficient material facts to show prejudice from trial counsel's arguable delay in filing the motion to withdraw. The State's position that a delay would prejudice the case would have been expressed even if the motion had been heard earlier. Love has not alleged material facts showing how those concerns would have been mollified even if the motion had been filed or heard immediately. Ultimately, Love has not shown there was a reasonable probability that the motion to withdraw would have been granted, much less undermined our confidence in the outcome of these proceedings. *See Strickland*, 466 U.S. at 694. We conclude this claim of ineffective assistance fails.

### B. Cross-examination on how Mary benefitted from the State's actions after her deposition

¶29 Love argues that trial counsel failed to cross-examine Mary about how she benefitted from the State's actions after her deposition. Mary had a misdemeanor drug charge unrelated to Love's case. After Mary's deposition in Love's case, the State converted the terms of Mary's pretrial release from cash bail on the drug charge to a signature bond, and she entered into a deferred prosecution agreement (DPA). Love argues that after the State gave his trial counsel a copy of the DPA, if counsel had performed a reasonable investigation, it would have revealed the State's actions that benefitted Mary.

¶30　Love asserts that, as Mary's credibility was a key issue for both the human trafficking and kidnapping counts, trial counsel was deficient for failing to highlight her motivation to lie and that failure prejudiced his defense. However, the record reflects that in both her deposition and at trial, Mary testified that she understood that the State was not going to prosecute her for drug or prostitution charges. She also stated in both that there was no deal, incentive, or threat motivating her testimony. The State argues that because the jury heard Mary's testimony that she was not being prosecuted for drug or prostitution charges, it was aware of a motive for her to lie. Therefore, additional cross-examination related to this topic would be cumulative. The State also argues that there was no condition in her DPA that required her to testify against Love.[9]

¶31　Love has not shown that there is a reasonable probability that even if the jury had learned about the DPA, the result of the trial would have been different. The jury was aware that Mary was not being charged for drug use or possession or prostitution, which would provide straightforward evidence of motivation for her to lie. Love's allegations are conclusory and provide no material facts supporting that the State's DPA in another case was conditioned on her testifying against Love or motivated her to lie about Love. We conclude that Love has failed to make a showing of prejudice. Accordingly, this claim fails.

---

[9] The State raises the issue that the DPA would not have been admissible as it was not relevant and it did not fall under WIS. STAT. § 906.09(1), which allows a witness to be questioned about the number of prior criminal convictions for "the purpose of attacking character for truthfulness." *Id.* Love argues the DPA was relevant, admissible evidence that had been disclosed by the State. We need not resolve this issue and decline to address it further.

### C.     Impeachment of Mary's testimony

¶32     Love argues that trial counsel was ineffective for failing to impeach Mary's testimony with evidence related to three issues: (1) their prior consensual sexual relationship; (2) damage to Love's vehicle as an alternate reason Mary owed him money; and (3) whether it was Mary or Love who placed a Backpage.com advertisement to secure prostitution dates for her.  The record reflects that Mary testified that she and Love had consensual sex only once, that she never drove his vehicle, and that Love placed a Backpage.com ad.  However, the record reflects that trial counsel did impeach Mary's testimony on these three issues.

¶33     We turn to the record.  During cross-examination, trial counsel questioned Mary about her deposition testimony that she "willingly did stuff with [Love]" and that she characterized their relationship as "[s]omebody I mess with."  Mary maintained they had sex only once, and did not recall, but did not deny, text messages that the police found between her known phone number and Love's phone discussing having a baby together or that she stated "I love you."  Mary also denied driving and damaging Love's vehicle, but she did not deny Love sent a text stating that she damaged his vehicle and threatened her over it.  When counsel questioned her about an "I'm sorry" text after the vehicle text exchange, Mary denied the text was about the vehicle.  On the issue of who set up the Backpage.com ad, during cross-examination, Mary testified that Love posted a different ad than the one she posted.

¶34     We conclude that Love has failed to make a showing of prejudice.  The record reflects that trial counsel cross-examined Mary on each of these issues and impeached her answers.  These allegations do not show that there was a

16

reasonable probability of a different result at trial because the jury heard about each of these issues. We conclude this claim of ineffective assistance fails.[10]

### D. Expert witness vouching by Detective Stott

¶35 Love argues that trial counsel was ineffective for failing to object to Detective Stott's expert witness vouching for Mary's credibility. "No witness, expert or otherwise," may opine that "another mentally and physically competent witness is telling the truth." *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984). "The credibility of a witness is ordinarily something a lay juror can knowledgeably determine without the help of an expert opinion." *Id.* Improper vouching testimony may arise from express or implied expert testimony opining another witness is truthful. *State v. Kleser*, 2010 WI 88, ¶102, 328 Wis. 2d 42, 786 N.W.2d 144.

¶36 In Love's postconviction motion, he alleged that Detective Stott's testimony was tantamount to Detective Stott testifying that she believed Mary. Detective Stott testified that she relied on corroboration as one of the "factors of truth" she considers when determining whether sex workers were working for themselves or were coerced to work for others. As Mary's credibility was a key issue for both the human trafficking and the kidnapping counts, Love asserts this vouching would have boosted her credibility for both counts. Love contends trial counsel was ineffective for failing to object.

---

[10] To the extent that Love argues that trial counsel's impeachment attempts should have been better, we conclude he has not alleged material facts to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

¶37    When we review a claim of impermissible vouching, we "examine the testimony's purpose and effect." ***State v. Pittman***, 174 Wis. 2d 255, 268, 496 N.W.2d 74 (1993).  The State argues that the purpose of this testimony was to explain how Detective Stott investigates human trafficking cases and how the evidence is gathered and processed.  Here, the State established Detective Stott as an expert on human trafficking, a status which is unchallenged.  Her testimony addressed her experience and training in this field.  Detective Stott's statements on corroboration and factors of truth were not implied commentary on Mary's credibility as a witness, but offered to assist the jury in understanding the investigation of a trafficking offense.  The record conclusively demonstrates that Detective Stott's testimony was not improper vouching.  Therefore, any objection would be meritless.  Counsel is not deficient for failing to present a meritless argument.  ***State v. Dalton***, 2018 WI 85, ¶53, 383 Wis. 2d 147, 914 N.W.2d 120.

¶38    We conclude Love failed to show that trial counsel's performance was deficient for failing to object to vouching during Detective Stott's testimony. This claim of ineffective assistance of counsel fails.

### E.    Jury instruction language change

¶39    Love argues that trial counsel was ineffective for failing to object to a change in the jury instruction for the human trafficking count.  At the jury instruction conference during the trial, the court questioned that the proposed jury instruction for the human trafficking count included party to a crime liability, which was incorrect. The State offered to remove that reference and tailor the jury instructions so they were "not just boiler-plated instructions."  The next day, the court instructed the jury that the State had to prove beyond a reasonable doubt that (1) Love knowingly engaged in trafficking, (2) Love enticed Mary for the purpose

of a commercial sex act, and (3) Love engaged in trafficking by threatening to cause bodily harm to Mary. In the original jury instructions, the second element was worded as Love "recruited" Mary for the purpose of a commercial sex act.

¶40 Love argues that the change from "recruited" to "enticed" modified the charged conduct underlying the offense. He contends that the criminal complaint and information charging the offense both stated "recruit." He argues that the change to "entice" allowed the State to argue that Love enticed Mary by different means—with drugs, with claims of love, or with protection, for example. He asserts this allowed the State to undercut Love's defense that this was a consensual relationship.

¶41 The State argues that the charged statutory violation remains the same, whether the term recruited or enticed were listed in the instruction. It contends that both words are included in the statute and are "conceptually similar." *See **State v. Lomagro***, 113 Wis. 2d 582, 593, 335 N.W.2d 583 (1983). It argues that the jury instruction did not change the charged conduct.

¶42 Love was charged with conduct contrary to WIS. STAT. § 940.302(2)(a), which criminalizes human trafficking if (1) either the trafficking was for the purposes of labor or services or the trafficking was for the purposes of a commercial sex act; and (2) the trafficking was done by any of twelve methods including "[c]ausing or threatening to cause bodily harm to any individual." "Trafficking" is defined in this section to mean "recruiting, enticing, harboring, transporting, providing, or obtaining, or attempting to recruit, entice, harbor, transport, provide, or obtain, an individual." Sec. 940.302(1)(d).

¶43 "The purpose of a jury instruction is to fully and fairly inform the jury of a rule or principle of law applicable to a particular case." ***Nommensen v.***

19

*American Cont'l Ins. Co.*, 2001 WI 112, ¶36, 246 Wis. 2d 132, 629 N.W.2d 301. "A challenge to an allegedly erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial" meaning that "it probably and not merely possibly misled the jury." *Fischer v. Ganju*, 168 Wis. 2d 834, 849-50, 485 N.W.2d 10 (1992). "If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Id.* at 850.

¶44    Even if we assume without deciding that it was deficient for trial counsel to fail to confirm the language in the jury instructions or object to the word change, Love has not shown prejudice from this change. The language in the jury instruction reflected a correct statement of the law under WIS. STAT. § 940.302. Love has not developed a legal argument to show that this word change misled the jury. He fails to make a showing of prejudice for this claim. We conclude that this claim of ineffective assistance fails.

### F. Viable defense to the third element of the human trafficking charge

¶45    Love argues that trial counsel was ineffective for failing to present a viable defense that the State did not prove the third element of the human trafficking charge: that Love engaged in trafficking by threatening to cause bodily harm to Mary. Love contends that Mary was engaged in prostitution on her own and did not testify that she engaged in prostitution at the motel because Love was threatening to cause bodily harm to her.

¶46    The State argues that Mary's testimony satisfied this element, even if she did not expressly testify that she was a prostitute because Love had threatened her with bodily harm. The record reflects that Mary testified that in late August 2015, Love picked her up and took her to the Suburban Motel, where he arranged

20

prostitution "dates" for her, using a Backpage.com ad with his phone number. She testified she did not have "a choice in the matter," stating "I had to do what he said. I didn't want anything to happen to me. I didn't want to get beat up for not going there. And so I did what he said until I found a way to escape from this hotel." She stated that Love forcefully took the money after the dates. She testified, "I was scared for my safety and my well-being." Mary stated that at the motel, Love and his co-actor, Heather Gauger, always stayed near her and waited outside in his vehicle while she was on prostitution "dates." She stated that she was "scared for [her] life to call the police" because she was afraid Love could get to her before the police could.

¶47    Love's allegations are conclusory and the record demonstrates that he is not entitled to relief. While Love does not challenge the sufficiency of the evidence for the human trafficking count, he asserts that the jury did not hear the viable defense that Mary never definitively testified to prostituting because of threats from Love, and thus the State did not prove the third element of the charge. However, Love's argument is a quibble over semantics in Mary's word choice. He does not grapple with the substance of Mary's testimony that she felt threatened by Love, that she was forced into these acts of prostitution by Love, and that she complied with Love because she was afraid for her safety and well-being. We conclude that Love has failed to show there is a reasonable probability that the outcome of the trial would have been different if counsel had argued this defense in light of the testimony Mary did give. Therefore, Love has failed to make a showing of prejudice. *See* ***Strickland***, 466 U.S. at 694.

¶48    Love further argues that trial counsel was ineffective for conceding in his closing argument that Mary felt threatened. Our examination of the record shows that trial counsel asked the jury to think critically about Mary's claims—

21

that she felt threatened and could not leave. Counsel argued that Mary did not want to be honest with the jury about the nature of her relationship with Love. "[C]ounsel has wide latitude in closing arguments" to comment on the evidence, witness motivation, and theories of defense. *State v. Lenarchick*, 74 Wis. 2d 425, 457, 247 N.W.2d 80 (1976). Trial counsel commented on the evidence elicited at trial. Love has not shown deficiency in counsel's closing argument. We conclude that Love has failed to show both deficiency and prejudice for any part of this claim and therefore, it fails.

¶49 Ultimately, each of Love's ineffective assistance of counsel claims fail. Therefore, Love was not entitled to an evidentiary hearing on his claims because the record conclusively demonstrates that his claims of ineffective assistance of counsel fail. Accordingly, the circuit court acted within its discretion when it denied Love's postconviction motion without a hearing. *See Allen*, 274 Wis. 2d 568, ¶9.

### IV.    *Prosecutorial misconduct*

¶50 Love argues that the prosecutor committed misconduct in three ways.[11] First, he asserts the prosecutor misinformed the circuit court about a prior ruling of the trial court. Second, he argues that the prosecutor improperly

---

[11] The State argues that Love has forfeited review of these issues because trial counsel did not make contemporaneous objections of misconduct or move for a mistrial on that basis. It asserts that Love should have brought the claims through ineffective assistance of counsel or plain error. For the claim of misrepresenting the trial court's ruling, counsel did not yet represent Love when the court made the ruling at issue; therefore, it borders on absurd to ask that counsel should have objected to the prosecutor's representation of the ruling. We review the claim for prosecutorial misconduct. For the claim of improper questioning of Detective Stott, Love alleged ineffective assistance and erroneous discretion by the circuit court to admit parts of her testimony, both claims that we have rejected above. For the jury instruction change, Love has alleged ineffective assistance already, which we also rejected above.

questioned Detective Stott, eliciting opinion testimony about whether a crime had been committed in this case. Third, he contends the prosecutor changed the language in the jury instruction for the human trafficking count, which violated WIS. STAT. § 971.29 because the change was prejudicial to his defense.

¶51 Prosecutorial misconduct "can rise to such a level that the defendant is denied his or her due process right to a fair trial." *State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992). "Whether a prosecutor engaged in misconduct and, if so, it warrants a new trial," is a question of law that we independently review. *State v. Jones*, 2010 WI App 133, ¶27, 329 Wis. 2d 498, 791 N.W.2d 390. We consider the entire record to determine whether prosecutorial misconduct prevented a fair trial from being conducted. *See State v. Bvocik*, 2010 WI App 49, ¶13, 324 Wis. 2d 352, 781 N.W.2d 719.

### A. Misrepresentation of the trial court's ruling

¶52 Love argues that the prosecutor engaged in misconduct when he failed to accurately inform the circuit court about the trial court's pretrial ruling regarding the admissibility of heroin paraphernalia found in Love's vehicle. To understand this issue, we recite from the record.

¶53 At the November 10, 2015 final pretrial hearing, the prosecutor informed the trial court that police had lawfully searched Love's vehicle after he was arrested for kidnapping; police found heroin paraphernalia in the back. The prosecutor argued the evidence also was relevant to the human trafficking count and one of the possible jury instructions for the third element—"threatening to control the victim's access to addictive controlled substances." The prosecutor argued that the paraphernalia was circumstantial evidence that corroborated the victim's description. The trial court ruled that the evidence was potentially

relevant, but "if it is introduced, it has to be introduced from the standpoint of the victim testifying about what occurred."

¶54     When the case moved to the circuit court for the trial, the prosecutor informed the court of the trial court's rulings related to, among other things, the heroin paraphernalia that had been found in Love's vehicle. The prosecutor argued it was relevant and the trial court had seemed to agree in a previous hearing. The circuit court asked the defense and the following exchange occurred:

> [TRIAL COUNSEL:] Well, I had understood that this was a ruling that had already been made. If it's still open for argument then—
>
> [THE STATE:] I just want to air it out. It was a ruling that—
>
> THE COURT: [The trial court] ruled—
>
> [THE STATE:] Yes, sir.
>
> THE COURT: —it was admissible?
>
> [THE STATE:] He did.
>
> THE COURT: Then I agree.
>
> [THE STATE:] Okay.
>
> THE COURT: I'm not going to change a ruling of [the trial court].

¶55     At the trial, an MPD officer described being assigned the day after the alleged kidnapping to surveil a room at the Suburban Motel, identify a specific vehicle belonging to Love, and then stop the vehicle. In an inventory search of the vehicle after Love was arrested, the officer found four cell phones and what he recognized as heroin paraphernalia—33 syringes, 23 aluminum caps, and 5 rubber bands.

¶56   In Love's postconviction motion, he argued that the prosecutor misrepresented the trial court's ruling on the relevance and admissibility of the paraphernalia in Love's vehicle. As the record reflects, the prosecutor did not reference the evidence being introduced "from the standpoint of the victim testifying about what occurred." The postconviction decision, adopting the State's response, concluded that the prosecutor's statement was not inconsistent because the evidence was admissible as long as the victim testified about the various ways Love controlled or attempted to control her.

¶57   Love argues that the circuit court's interpretation of the facts was unreasonable, which resulted in denying him a fair trial. To consider this issue, we examine the entire record. Mary testified that at the time of the trafficking, she was "highly addicted to heroin and crack cocaine." She mentioned that on multiple occasions, Love had offered her samples of crack cocaine and heroin, but she only accepted drugs from him once. She then testified to buying drugs from other people without Love knowing. As discussed in Detective Stott's testimony, Mary received a text from Love's phone number that instructed her not to purchase or obtain drugs from other people. The MPD officer who testified to finding the heroin paraphernalia in the search of Love's vehicle was called as a witness after Mary.

¶58   We conclude that while the prosecutor's comments could have been more forthcoming to the circuit court, the State only introduced the paraphernalia evidence after Mary testified that she was controlled by Love. Her statements that she purposefully did not obtain drugs from Love demonstrates that she felt a threat over the control of her "access to addictive controlled substances." Therefore, we consider an error in the prosecutor's description of the trial court's ruling harmless in light of its use of the evidence. We conclude that there is no evidence that the

prosecutor's use of the heroin paraphernalia evidence infected the trial with unfairness or denied Love due process. *See Wolff*, 171 Wis. 2d at 167.

### B.      Improper questioning of Detective Stott

¶59    Love takes a third approach to arguing that Detective Stott's testimony was improper, this time based upon the questions the State asked. Trial counsel objected to several of the questions the prosecutor asked, arguing that the prosecutor was making conclusions of a legal nature and presenting argument to the jury through the witness. In response, the circuit court required the prosecutor to rephrase the questions. The detective's testimony did not usurp the jury's function as the finder of fact and she did not offer legal conclusions. We conclude that there is no evidence that the prosecutor's line of questioning of Detective Stott and the testimony those questions elicited infected the trial with unfairness or denied Love due process. *See Wolff*, 171 Wis. 2d at 167.

### C.      Change to the jury instruction

¶60    Love argues that the prosecutor engaged in misconduct when he filed and the circuit court utilized a jury instruction for human trafficking that changed the charged conduct from "recruit" to "entice" without filing an amended information, asking the court for permission to amend the charge, pursuant to WIS. STAT. § 971.29(2), or notifying the court or trial counsel about the change.

¶61    As discussed above, the change in words in the instruction was not a material change of the charged conduct. Trafficking in this statute includes recruiting and enticing. WIS. STAT. § 940.302(1)(d). The terms are "conceptually similar." *See Lomagro*, 113 Wis. 2d at 593. Further, Love's allegations that the circuit court was unaware of the instruction the court gave is speculative and

conclusory. Our examination of the record shows that the circuit court showed a command of the instructions during the final jury instructions conference, and the court identified an error in the instructions as filed. Love's allegations that the prosecutor slipped the changed jury instructions past the court lacks a basis in material fact. We conclude that there is no evidence that this change to the jury instruction denied Love due process. *See **Wolff***, 171 Wis. 2d at 167.

¶62 Overall, we conclude that Love has not alleged sufficient material facts to be entitled to an evidentiary hearing on any of his claims of prosecutorial misconduct. His allegations were insufficient and conclusory. We conclude that the circuit court acted within its discretion when it denied this claim without a hearing. *See **Allen***, 274 Wis. 2d 568, ¶9.

### V. *Denial of a new attorney before trial*

¶63 Love argues that the circuit court erroneously exercised its discretion when it denied trial counsel's motion to withdraw and denied Love the opportunity to have new counsel. The State argues that Love is raising a new claim for the first time on appeal and we should decline to review it.

¶64 "As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal." ***State v. Dowdy***, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691. While a party does "not forfeit[] an argument on appeal when it merely refines an argument that it made in the circuit court," ***State v. Johnson***, 2025 WI App 20, ¶17, 415 Wis. 2d 682, 19 N.W.3d 645, we must analyze "whether particular arguments have been preserved, not on whether general issues were raised before the circuit court." ***Townsend v. Massey***, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155. "Whether a claim is forfeited or adequately preserved for appeal is a question of law that this court"

independently reviews. ***State v. VanderGalien***, 2024 WI App 4, ¶13, 410 Wis. 2d 517, 2 N.W.3d 774.

¶65 Love argues that he raised the issue to the circuit court and in his postconviction motion. Our examination of the record shows that Love communicated directly with the trial and circuit courts about his desire for new counsel. In his postconviction motion, Love's factual allegations referenced that the trial court took no action on his request for new counsel and the circuit court denied counsel's motion to withdraw. However, Love did not develop an independent claim with legal argument and authority to the circuit court. We conclude that while Love may have preserved a general issue, he has not preserved the legal argument. We therefore conclude this claim is forfeited.

### VI. *Interest of justice*

¶66 Love argues that the real controversy has not been tried and we should remand for a new trial in the interest of justice. This court may order a new trial pursuant to WIS. STAT. § 752.35 when the real controversy has not been fully tried or when it is probable that justice has miscarried. This court's power of discretionary reversal is limited to "*exceptional* cases." ***State v. McKellips***, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258. To consider whether a case is one of the few requiring discretionary reversal, this court "must engage in 'an analysis setting forth the reasons' that the case may be characterized as exceptional." ***Id.*** (citation omitted). We are unable to state that this case is exceptional and we conclude that the controversy was fully tried.

## CONCLUSION

¶67    For the reasons stated above, we conclude that Love's claims fail and he was not entitled to an evidentiary hearing on any of his postconviction claims. Therefore, the circuit court acted within its discretion when it denied his motion without a hearing.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.